**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

DEC - 5 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| **ERIC N. HEYER,** | ) |
| 1418 N. Rhodes St., Apt. 120 | ) |
| Arlington, VA 22209, **Plaintiff,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **BANCROFT LIFE & CASUALTY ICC,** | ) |
| **LTD.,** | ) |
|  | ) |
| **PHILIP SIGEL,** | ) |
|  | ) |
| **and** | ) |
|  | ) |
| **RELIANT RE INSURANCE** | ) |
| **COMPANY, LLC,** | ) |
|  | ) |
| **Defendants.** | ) |

Case: 1:14-cv-02057
Assigned To : Sullivan, Emmet G.
Assign. Date : 12/5/2014
Description: Pro Se Gen. Civil

**COMPLAINT**

1.      Plaintiff, Eric N. Heyer, for his complaint against Defendants Bancroft Life &

Casualty ICC, Ltd. ("Bancroft"), Philip Sigel ("Sigel"), and Reliant Re Insurance Company,

LLC ("Reliant"), alleges and avers as follows:

**NATURE OF THE ACTION**

2.      This is an action for breach of contract, promissory estoppel, unjust enrichment /

*quantum meruit*, the declaration and enforcement of an attorney's lien, and conversion arising

out of Defendants' bad faith failures and refusal to pay Plaintiff for legal work performed on

their behalf in violation of their agreements with and representations to Plaintiff and Defendants'

unlawful exercise of control over funds earned by and belonging to Plaintiff.

**RECEIVED**

DEC - 5 2014

Clerk, U.S. District and
Bankruptcy Courts

1

## THE PARTIES

3.      The Plaintiff, Eric N. Heyer, is an attorney admitted to the bar of the District of Columbia.  Plaintiff is a resident and citizen of Virginia and resides at 1418 N. Rhodes Street, Apt. 128, Arlington, Virginia 22209.  Plaintiff has at all times relevant to this action practiced law from an office in the District of Columbia.

4.      Defendant Philip Sigel is an individual resident and citizen of Florida and resides at 27 Tahiti Beach Road, Coral Gables, Florida 33142.  Upon information and belief, Sigel, through a series of trust arrangements, has a majority ownership interest in both Defendants Bancroft and Reliant, and, in conjunction with Stuart Anolik and Marc Anolik, has exclusively controlled all executive decision-making for Bancroft since at least 2010 and for Reliant since its inception in 2012.  Sigel is licensed to practice law in the State of Florida and, upon information and belief, is a member of the Florida bar.

5.      Defendant Bancroft Life & Casualty ICC, Ltd. is a corporation organized under the laws of Saint Lucia, West Indies.  Despite the fact that Sigel incorporated Bancroft offshore, he, Stuart Anolik, and Marc Anolik control all of Bancroft's activities from Florida, Maryland (where Stuart Anolik and Marc Anolik live and where Stuart Anolik works), the District of Columbia (where Marc Anolik works) and otherwise within the United States.  While the lease is held by a different entity, Bancroft maintains a de facto office in the District of Columbia where, from 2012 until the present, Marc Anolik and Bancroft's bookkeeper have regularly worked and meetings with Stuart Anolik and Sigel regarding Bancroft's business were routinely held.

6.      Defendant Reliant Re Insurance Company, LLC, is a Delaware series limited liability company that purports to offer captive insurance solutions to its clients.  Upon information and belief, Reliant has been owned and controlled by Sigel, Marc Anolik, and Stuart

Anolik through a series of trust arrangements since its founding in late 2012.  All executive decisions for Reliant are effectively made by Sigel.  While the lease is held by a different entity, Reliant maintains a de facto office in the District of Columbia where, from 2012 until the present, Marc Anolik and Reliant's bookkeeper have regularly worked and meetings with Stuart Anolik and Sigel regarding Bancroft's business were also routinely held.

## JURISDICTION

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1), (2) and/or (3) insomuch as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States as regards Plaintiff and Defendants Sigel and Reliant and between a citizen of a State and a citizen or subject of a foreign state as regards Bancroft.

8.      This Court has personal jurisdiction over Defendants pursuant to D.C. Code § 13-423(a)(1), (3), and (4), as Plaintiff's claims arise from Defendants' transacting business in the District of Columbia, causing tortious injury in the District of Columbia by acts or omissions in the District of Columbia, and causing tortious injury in the District of Columbia by an act or omission outside of the District of Columbia when Defendants regularly do and solicit business, and engage in other persistent courses of conduct in the District of Columbia.

9.      Venue is appropriately laid in this district pursuant to 28 U.S.C. § 1391(b)(2) and / or (3) because a substantial part of the events or omissions giving rise to the claim occurred in this district and each defendant is subject to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

10.     Plaintiff is a trial attorney who is admitted in and routinely practices in the state and federal courts of the District of Columbia.

11.     From 2006 until March 2012, Plaintiff was employed in the District of Columbia office of a major national law firm.

12.     Commencing in or about early 2010, Plaintiff, as well as several other attorneys from that law firm, began representing Bancroft in a series of lawsuits in federal courts around the country, the first of which was filed by Bancroft in the United States District Court for the Western District of Pennsylvania.

13.     Because of the sheer quantity of litigation in which Bancroft had become embroiled by the end of 2011 and beginning of 2012, Sigel invited Plaintiff to join another attorney in leaving the firm and continuing to conduct litigation on behalf of Bancroft on their own.

14.     As inducement for Plaintiff to leave his employment and to continue to conduct the litigation on behalf of Bancroft, Sigel repeatedly promised Plaintiff and the other attorney both a fixed monthly amount for all legal work that the two would perform on behalf of Bancroft and, crucially, an additional fee of 25 percent of any recoveries that Plaintiff and the other attorney obtained for Bancroft in a series of collection actions that had already been filed and that they would file in the future on Bancroft's behalf, regardless of whether such recoveries were obtained through settlement or judgment.  Sigel made this representation both directly to Plaintiff on many occasions both prior to and after Plaintiff's departure from his firm and indirectly through the other attorney on many occasions both prior to and after Plaintiff's departure from his firm.

15.     In reliance on Sigel and Bancroft's promise, Plaintiff announced his resignation from his employer and began practicing law in conjunction with the other attorney in March 2012.  Approximately 95 percent of all of the legal work that Plaintiff performed over the next

two years was on behalf of Bancroft, Sigel, and Reliant, a new captive insurance company established by Sigel, Marc Anolik, and Stuart Anolik in Delaware in late 2012.

16.    In or about April 2013, Plaintiff and the other attorney secured a settlement of a group of seven related cases on Bancroft's behalf following a mediation conducted in the District of Columbia on February 21, 2013.[1]  Immediately following the mediation, at which were present, among others, Plaintiff, Sigel, Marc Anolik, Stuart Anolik, and Bancroft's outside CPA, Jeffrey Manwiller, Sigel and Manwiller proceeded to draw up calculations on the whiteboard in the conference room where the mediation was held of how the settlement proceeds would affect the reserves in Bancroft's captive insurance pool.  As part of that written calculation, Sigel backed out the $525,000 in fees that were to be paid out of the settlement funds to Plaintiff and the other attorney pursuant to the agreement and Sigel and Bancroft's prior repeated representations.  All parties acknowledged that the $525,000 had been fully earned by Plaintiff and the other attorney and was to be paid once the settlement proceeds were received.

17.    Thereafter, once the settlement proceeds were received by Bancroft on or about April 30, 2013, Sigel, Stuart Anolik, and Bancroft proceeded to repeatedly delay transfer of the corresponding fees to Plaintiff and the other attorney.  Throughout the Summer and Fall of 2013, despite repeated inquiries directed by Plaintiff to Sigel and Stuart Anolik as to when the fees would be paid, Sigel and Stuart Anolik repeatedly represented that payment would be forthcoming in short order.

---

[1] The seven cases were: *Bancroft Life & Casualty ICC, Ltd. v. FFD Resources II, LLC*, Case No. 4:11-cv-2384 (S.D. Tex.); *Bancroft Life & Casualty ICC, Ltd. v. FFD Resources III, LLC*, Case No. 4:11-cv-2382 (S.D. Tex.); *Bancroft Life & Casualty ICC, Ltd. v. FFD Resources IV, LLC*, Case No. 3:11-cv-214 (D. Nev.); *Bancroft Life & Casualty ICC, Ltd. v. Richard D. Clay*, Case No. 1:11-cv-1505 (N.D. Ga.); *Bancroft Life & Casualty ICC, Ltd. v. Davnic Ventures, L.P.*, Case No. 4:12-cv-0215 (S.D. Tex.); *Bancroft Life & Casualty ICC, Ltd. v. KLC Ventures, L.P.*, Case No. 4:12-cv-0213 (S.D. Tex.); and *FFD Ventures, L.P, et al., v. Bancroft Life & Casualty ICC, Ltd.*, Claim No. SLUHCV2012/1036 (High Court of Justice of St. Lucia).

18.     Throughout 2012 and 2013, Plaintiff and the other attorney notched up a series of successes on behalf of Bancroft in various state and federal courts, including favorable rulings on several motions to dismiss claims and counterclaims directed against Bancroft, motions for reconsideration of such rulings, and a "clean sweep" judgment in August 2013 as a result of a bench trial in *Bancroft Life & Casualty ICC, Ltd. v. TMC Financial, et al.*, Case No. 1:11-cv-903, in the United States District Court for the Eastern District of Virginia.

19.     Throughout the course of 2012 and particularly 2013, Plaintiff maintained a grueling schedule working on behalf of Bancroft, as the legal team was working significantly understaffed and on a limited budget.  It was not uncommon for Plaintiff's work days to start at 3:30 or 4:00 am and Plaintiff was required to stay at the office until 10:00 pm or later on many occasions to complete and see to it that significant briefs on dispositive motions were filed.  In addition to virtually exclusive responsibility for substantial document reviews and productions numbering in the tens of thousands of pages for each case, Plaintiff also was responsible for researching and preparing motions and briefs, as well as preparing witnesses for and taking and defending depositions of fact witnesses, expert witnesses, and parties all around the country, including in California, Texas, Virginia, Wisconsin, Illinois, and Pennsylvania.  The trial schedule for Bancroft was particularly onerous in 2013, as there were lengthy federal court trials in Virginia, Washington state, and Pennsylvania with amounts at issue ranging in the millions of dollars in July and August, October, and December of that year.

20.     In early January 2014, Bancroft finally paid Plaintiff and the other attorney an amount that Sigel and Bancroft claimed was the full fee to which they were entitled to as a result of the settlement some nine months earlier.  The amount actually paid, however, was only a fraction of the total $525,000 owed, and Plaintiff's share was short by the amount of $58,354.71.

21.     Plaintiff and Sigel met in the District of Columbia on the morning of January 11, 2014, to discuss the shortfall.

22.     During that meeting, Sigel stated that he understood that Plaintiff had been "killing yourself" since March 2012 through all of his work on behalf of Bancroft and that he did not want Plaintiff to think that Sigel was dishonorable or would not keep his promises.  Sigel specifically reiterated that Plaintiff would be paid the remaining amount owed from the earlier settlement, including by Sigel using his own personal funds if necessary.  Sigel also promised that Plaintiff would continue to receive his fixed monthly amount for three months, so that, as soon as the pressure of pending work subsided, Plaintiff would have a "runway" to search for a new job while Plaintiff continued his legal work on behalf of Bancroft, Reliant, and Sigel.  At the end of the meeting Sigel shook Plaintiff's hand to reinforce that his promise would be kept.

23.     Sigel indirectly reiterated and confirmed the three-month runway promise through repeated statements to the other attorney that he knew and expected would be repeated to Plaintiff (and which were in fact repeated to Plaintiff) to the effect that the three-month runway would commence on February 1, 2014.  Sigel also referenced the three-month "runway" promise in a January 26, 2014 email he sent to, *inter alia*, Plaintiff.

24.     After the January meeting with Sigel, Plaintiff continued to diligently pursue his legal work on Bancroft, Sigel, and Reliant's behalf, including briefing and traveling to Houston, Texas to present oral argument on summary judgment motions on Bancroft's behalf for a case that was set to proceed to trial in late January, conducting document reviews and continuing discovery in other matters, including a matter in which Sigel had a personal stake in the outcome,

[2] and addressing legal issues for Reliant.  Plaintiff avoided putting off a full-blown job search for some time based on Sigel's promise of the three-month runway to commence on February 1, 2014.

25.     As part of his legal work in the February 2014 time frame, Plaintiff worked on researching and preparing a complaint to be filed by Bancroft in the United States District Court for the Eastern District of Virginia against Pittsburgh Fire & Casualty Co. for legal fees that the insurer was obligated to pay Bancroft for its defense of the earlier Virginia action.

26.     During January and February 2014, three of the remaining five collection cases on which Plaintiff and the other attorney had been working for many months were settled by Bancroft in exchange for settlement payments by the opposing parties.  In two of the three cases, the other parties had sued Bancroft first.  Sigel and Bancroft, however, failed and refused to pay Plaintiff and the other attorney any of the fees that they had repeatedly promised would be paid as a result of such settlements and which they had earned as a result of their efforts over the previous almost two years.

27.     Thereafter, on February 19, 2014, Plaintiff was suddenly told by Marc Anolik that Bancroft would no longer be paying for Plaintiff's legal services.  When Plaintiff thereafter contacted Sigel and left a message asking Sigel to contact him, Sigel failed to return Plaintiff's call.  However, on March 5, 2014, Sigel sent an email to Plaintiff, among others, thanking them for their extensive efforts on Bancroft's behalf and celebrating the fact that Bancroft had settled the last of its collection cases.  Plaintiff was never paid for the approximately three weeks he

---

[2] Plaintiff is not providing additional information regarding the nature of this matter in this complaint because of his confidentiality obligations to his former clients.  To the extent such may be required, Plaintiff will file a more detailed explanation of this allegation under seal or in an amendment to the complaint.

8

performed legal work on Bancroft, Sigel, and Reliant's behalf during the month of February 2014.

28.     Bancroft ultimately also filed the complaint against Pittsburgh Fire & Casualty Co. that Plaintiff had worked on preparing in the United States District Court for the Eastern District of Virginia.  Upon information and belief, Bancroft has since reached a settlement with the insurer in that case and likely has already received payment of the settlement amount.

29.     Upon information and belief, Bancroft has also subsequently settled the remaining two collection cases that remained unsettled at the time Plaintiff was told he would no longer be paid and stopped performing legal work on Bancroft's behalf.  Bancroft has never paid Plaintiff any of the amounts Sigel and Bancroft promised as a result of any settlement payments Bancroft received in these cases.

30.     Bancroft, Sigel, and Reliant have subsequently refused to pay, and have never paid: (i) the $58,354.71 owed and properly belonging to Plaintiff as a result of the April 2013 settlement of the seven related cases; (ii) Plaintiff's fixed monthly amount for the three-month "runway" that was to begin in February 2014 and run through April 2014, including for the three weeks that Plaintiff actually worked in February 2014 (including work on the case against Pittsburgh Fire & Casualty); or (iii) Plaintiff's share of the fees associated with the remaining collection cases that Bancroft settled in 2014.

31.     While the total amount of the settlements for the two collection cases settled after Plaintiff was told he would no longer be paid and the settlement of the Pittsburgh Fire & Casualty case is unknown to Plaintiff, upon information and belief, the total amount due and owing to Plaintiff by Bancroft, Sigel, and Reliant exceeds $100,000.

## COUNT I
(Breach of Contract against Bancroft)

32.     Plaintiff restates and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

33.     Prior to Plaintiff's leaving his former firm in March 2012 and as a condition of his performing legal work on behalf of Bancroft after that point, Plaintiff and Bancroft, through Sigel, agreed that Plaintiff, in conjunction with the other attorney, would receive a fee of 25 percent of any recoveries they might obtain for Bancroft in the various cases that were then pending or would be brought by Plaintiff and the other attorney.

34.     The terms of this agreement were reasonable, valid, and enforceable.

35.     Bancroft, through Sigel, reiterated, ratified, and confirmed that agreement on many occasions over the ensuing months, including in many telephone calls, in-person meetings, through the discussions and Sigel's written calculations backing out the full $525,000 immediately following the successful mediation on February 21, 2013, and again during Plaintiff and Sigel's January 11, 2014 meeting.

36.     On and after January 11, 2014, Plaintiff and Bancroft, through Sigel, agreed that, in exchange for Plaintiff continuing to perform work on behalf of Bancroft, Plaintiff would be given a three-month "runway" commencing on February 1, 2014, during which Bancroft would continue to pay his regular fixed monthly amount.

37.     The terms of the "runway" agreement are reasonable, valid, and enforceable and Sigel subsequently reiterated, ratified, and confirmed the existence of the agreement.

38.     Bancroft breached the agreement by failing and refusing to pay the full 25 percent due and owing as a result of the April 2013 settlement and by failing to pay Plaintiff his full portion of the associated fee.

39.     Bancroft also breached the agreement by failing and refusing to pay any of the 25 percent due and owing as a result of the subsequent settlements of the five additional cases.

40.     Bancroft breached the "runway" agreement by failing and refusing to pay any of the amounts for the three-month "runway" promised to Plaintiff and by Marc Anolik's notifying Plaintiff on February 19, 2014, that Bancroft would no longer be paying for any of Plaintiff's legal services.

41.     Plaintiff has suffered damages in excess of $75,000, exclusive of interest and costs, as a result of Bancroft's breaches.

WHEREFORE, Plaintiff, Eric N. Heyer, prays that a judgment be entered in his favor and against Defendant Bancroft Life & Casualty ICC, Ltd..:

A.     Awarding compensatory damages in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

B.     Awarding pre- and post-judgment interest;

C.     Awarding costs; and

D.     Granting such other and further relief as is necessary and appropriate.

## COUNT II
(Breach of Contract against Sigel)

42.     Plaintiff restates and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

43.     During their January 11, 2014 meeting, as a condition of Plaintiff continuing to perform work on behalf of Sigel, Bancroft, and Reliant, Sigel promised that he would use his personal funds to ensure that Plaintiff was made whole for the amount that he had been shorted from the Spring 2013 settlement.

44.     The terms of this agreement were reasonable, valid, and enforceable.

45.      Sigel received a direct, personal benefit from the promise insomuch as, in reliance on Sigel's promise, Plaintiff continued to perform legal work that directly benefited Sigel in January and February 2014 following Sigel's promise to Plaintiff.

46.      Sigel breached this agreement by failing and refusing to pay any of the $58,354.71 due and owing Plaintiff from the settlement proceeds.

47.      Plaintiff has suffered damages in the amount of $58,354.71 as a result of Sigel's breach.

WHEREFORE, Plaintiff, Eric N. Heyer, prays that a judgment be entered in his favor and against Defendant Philip Sigel:

A.      Awarding compensatory damages in an amount to be proved at trial, but in no event less than $58,354.71;

B.      Awarding pre- and post-judgment interest;

C.      Awarding costs; and

D.      Granting such other and further relief as is necessary and appropriate.

### COUNT III
(Promissory Estoppel Against Bancroft)

48.      Plaintiff restates and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

49.      Bancroft repeatedly promised Plaintiff that he and the other attorney would receive 25 percent of any recoveries that Bancroft obtained through settlement or judgment in any of the cases that Plaintiff and the other attorney were litigating or would litigate on behalf of Bancroft, including the April 2013 settlement.

50.     Plaintiff relied upon that promise by *inter alia*, resigning from his position at his former firm and subsequently performing extensive legal work for Bancroft between March 2012 and February 2013 in reliance thereon.

51.     Plaintiff's reliance was reasonable.

52.     Plaintiff relied upon the promise to his detriment in that he resigned his position with former firm, worked on behalf of Bancroft from March 2012 to February 2014, and was never paid the full amounts promised either as a result of the April 2013 settlement or as a result of the 2014 settlements of the cases in which Bancroft was involved.

53.     Bancroft, through Sigel, also promised Plaintiff on and after January 11, 2014, that he would be paid the amount which he had been shorted as a result of the April 2013 settlement and that he would receive payment for the three-month "runway" commencing on February 1, 2014.

54.     Plaintiff relied on that promise by, *inter alia*, not immediately withdrawing his appearance as Bancroft's counsel as a result of the unpaid fees from the April 2013 settlement and continuing to perform legal work on Bancroft's behalf through most of the month of February.

55.     Plaintiff's reliance was reasonable.

56.     Plaintiff relied upon the promise to his detriment in that he continued to perform legal work for Bancroft through the months of January and February 2014, was never paid for work performed for Bancroft during the month of February 2014, was never paid the promised shortfall from the April 2013 settlement, and was left unemployed for a time.

57.     Plaintiff has suffered damages as a result of his reasonable reliance on the promises described above.

WHEREFORE, Plaintiff, Eric N. Heyer, prays that a judgment be entered in his favor and against Defendant Bancroft Life & Casualty ICC, Ltd.:

A.      Awarding compensatory damages in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

B.      Awarding pre- and post-judgment interest;

C.      Awarding costs; and

D.      Granting such other and further relief as is necessary and appropriate.

## COUNT IV
(Promissory Estoppel Against Sigel)

58.     Plaintiff restates and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

59.     During their January 11, 2014 meeting, Sigel promised Plaintiff that he would use his personal funds to ensure that Plaintiff was made whole for the amount that he had been shorted from the Spring 2013 settlement.

60.     Plaintiff relied on that promise by, *inter alia*, not immediately withdrawing his appearance as Bancroft's counsel as a result of the unpaid fees from the April 2013 settlement and continuing to perform legal work on Bancroft's behalf through January and February 2014.

61.     Plaintiff's reliance was reasonable.

62.     Plaintiff relied on the promise to his detriment in that, despite the fact that he continued to perform legal work for Bancroft, he was never paid the promised shortfall from the April 2013 settlement or paid for his work in February 2014.

63.     Plaintiff has suffered damages as a result of his reasonable reliance on the promise described above.

WHEREFORE, Plaintiff, Eric N. Heyer, prays that a judgment be entered in his favor and against Defendant Bancroft Life & Casualty ICC, Ltd..:

A.      Awarding compensatory damages in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

B.      Awarding pre- and post-judgment interest;

C.      Awarding costs; and

D.      Granting such other and further relief as is necessary and appropriate.

## COUNT V
(Unjust Enrichment / Quantum Meruit Against Bancroft, Sigel, and Reliant)

64.      Plaintiff restates and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

65.      Plaintiff provided valuable legal services for Bancroft, Sigel, and Reliant during the period from March 2012 through February 2014.

66.      Bancroft, Sigel, and Reliance accepted and benefited from such legal services under circumstances that reasonably notified them that Plaintiff expected to be paid the full amounts promised him, including the fees resulting from settlements or judgments of the cases litigated by Plaintiff.

67.      Bancroft, Sigel, and Reliance have failed to fully compensate Plaintiff for the services performed by Plaintiff on their behalf and for their benefit under circumstances that, as between Defendants and Plaintiff, are unjust.

68.      Plaintiff has suffered damages and is entitled to monetary damages and/or restitution as a result.

WHEREFORE, Plaintiff, Eric N. Heyer, prays that a judgment be entered in his favor and against Defendants Bancroft Life & Casualty ICC, Ltd., Philip Sigel, and Reliant Re Insurance Company, LLC:

A.      Awarding compensatory damages and/or restitution in an amount to be proven at trial, but in no event less than $75,000, exclusive of interest and costs;

B.      Awarding pre- and post-judgment interest;

C.      Awarding costs; and

D.      Granting such other and further relief as is necessary and appropriate.

## COUNT VI
(Declaration and Enforcement of Attorney's Lien against Bancroft)

69.     Plaintiff restates and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

70.     An actual and justiciable controversy exists between Plaintiff and Bancroft as to Plaintiff's claim to an equitable attorney's lien on any settlement amounts received by Bancroft as a result of its lawsuit against Pittsburgh Fire & Casualty Co.

71.     Plaintiff seeks a declaration: (i) that he is entitled to an attorney's lien in an amount to be determined at trial on any settlement amounts received by Bancroft as a result of its lawsuit against Pittsburgh Fire & Casualty Co.; and (ii) requiring Bancroft to pay the settlement funds covered by such lien to Plaintiff.

WHEREFORE, Plaintiff, Eric N. Heyer, prays that a judgment be entered in his favor and against Defendant Bancroft Life & Casualty ICC, Ltd..:

A.      Declaring that Plaintiff has an equitable attorney's lien on Bancroft's settlement with Pittsburgh Fire & Casualty Co. in an amount to be proved a trial;

B.      Enforcing the equitable attorney's lien and directing that such settlement funds be

paid over to Plaintiff;

C.      Awarding costs; and

D.      Granting such other and further relief as may be necessary and appropriate.

## COUNT VII
(Conversion against Bancroft)

72.      Plaintiff restates and incorporates by reference paragraphs 1 through 31 above as

if fully set forth herein.

73.      The monies to which Plaintiff is entitled as a result of the successful settlements

of the cases which he litigated on behalf of Bancroft constitute property properly belonging to

Plaintiff.

74.      Bancroft has unlawfully exercised, and continues to unlawfully exercise,

ownership, dominion, and control over such property in denial and repudiation of Plaintiff's

rights thereto.

75.      Plaintiff has suffered damages as a result.

WHEREFORE, Plaintiff, Eric N. Heyer, prays that a judgment be entered in his favor and

against Defendant Bancroft Life & Casualty ICC, Ltd..:

A.      Awarding compensatory damages in an amount to be proven at trial, but in no

event less than $75,000, exclusive of interest and costs;

B.      Awarding pre- and post-judgment interest;

C.      Awarding costs; and

D.      Granting such other and further relief as is necessary and appropriate.

**Plaintiff requests a trial by jury on all claims so triable.**

_____

Eric N. Heyer
D.C. Bar No. 500095
1418 N. Rhodes Street, Apt. 128
Arlington, Virginia 22209
Phone: (202) 263-4128
Fax: (202) 331-8330

*Proceeding Pro Se*